ADAMS, J.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIVERSIFIED MACHINE, INC. | ) | CASE NO. 5:06CV2537 |
| | ) | |
| Plaintiff, | ) | |
| | ) | <u>JUDGE JOHN R. ADAMS</u> |
| v. | ) | |
| | ) | MEMORANDUM OPINION & ORDER |
| RAVENNA ALUMINUM, INC. | ) | [Resolving Doc. 10] |
| | ) | |
| Defendant. | ) | |
| | ) | |

### I. Introduction

This matter came before the Court on Plaintiff's Revised Motion for Temporary Restraining Order and/or Preliminary Injunction. On October 27, 2006, after notice to the parties, the Court held a hearing on the motion. The Court heard oral arguments from counsel and took evidence. The Court has also reviewed the following: Plaintiff's First Amended Complaint; Plaintiff's Revised Motion for a Temporary Restraining Order and/or Preliminary Injunction; Memorandum in Support; Defendant's opposition thereto; exhibits; and the applicable law. Having reviewed this matter in its entirety and for the reasons that follow, the Court hereby denies Plaintiff's motion.

### II. Background Facts

Plaintiff Diversified Machine, Inc. ("Diversified") manufactures a custom-designed, custom-made engine component called the Cyclone Lower Intake Manifold (the "Cyclone"). Diversified supplies the Cyclone to Ford Motor Company ("Ford"). Defendant Ravenna Aluminum, Inc. ("Ravenna") supplies Diversified with custom-tooled aluminum castings that Diversified uses to make the Cyclone.

The parties operated whereby Diversified would issue blanket purchase orders to Ravenna. The purchase orders were based on Ford's broadcast of its supply needs. According to Diversified, it would issue Ravenna a blanket purchase order in order to maintain an adequate supply of the Cyclone castings so that it could meet Ford's broadcasted supply needs. In other words, Diversified would, instead of ordering specific quantities in the original purchase order, send "releases" to Ravenna that would modify the blanket purchase order by specifying the delivery of "certain" quantities of castings on particular dates that correlated with Ford's broadcast of its supply needs.

On October 16, 2006, Ravenna notified Diversified that it would not continue to deliver the castings unless Diversified agreed to a price increase and guaranteed Ravenna future work. Diversified then filed its Complaint with this Court and its Motion for Temporary Restraining Order and/or Preliminary Injunction claiming Ravenna's refusal to deliver any more castings amounted to anticipatory repudiation and breach of contract. Ravenna, in its opposition to Diversified's motion, claimed that Diversified did not have a requirements contract with Ravenna.

### III.  Law & Analysis

Four factors are important in determining whether a temporary restraining order or preliminary injunction is appropriate: (1) the likelihood of the plaintiff's success on the merits; (2) whether the injunction will save the plaintiff from irreparable injury; (3) whether the injunction would harm others; and (4) whether the public interest would be served by the injunction. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985). The test is a flexible one and the factors are not prerequisites to be met, but must be balanced. *Id.* at 1229. In balancing the four considerations applicable to temporary restraining order/preliminary injunction decisions, the Court holds that equitable relief is not appropriate.

2

As to the first factor, the Court finds that Diversified has not demonstrated a likelihood that it would succeed on the merits. The parties agree that Michigan law controls this dispute. Accordingly, the Court must consider whether Diversified would likely succeed on the merits for its causes of action for anticipatory repudiation/breach of contract and for specific performance. In order to prevail on a breach of contract theory, Diversified must prove: (1) the existence of a contract between Diversified and Ravenna; (2) the terms of the contract; (3) that Ravenna breached the contract; and (4) that the breach caused the injury. *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 819 (6th Cir. 1999).

By its own admission Diversified characterizes its contract as a requirements contract. According to Michigan law, the quantity term for the sale of goods must be expressed in writing. *See generally Lorenz Supply Co. v. American Standard, Inc.*, 358 N.W.2d 845, 847 n.3 (Mich. 1984) ("A requirements or output term of a contract although general in language, nonetheless is, *if stated in the writing*, specific as to quantity . . . .) (emphasis in original) (citations omitted). *See also Easy Way, Inc. v. Transport Int'l Pool, Inc.*, 67 Fed. Appx. 863, 867 (6th Cir. 2003) (noting that Michigan law requires that the quantity term be specified in the writing). If the quantity term is not accurately stated, recovery is limited to the stated amount. *Lorenzo Supply Co.*, 358 N.W.2d at 847.

Here, Diversified claims that the requirements contract it had with Ravenna obligated Ravenna to ship up to some 325,000 castings to Diversified. However, the evidence conclusively shows only that Ravenna's machine was *capable* of tooling 325,000 castings. In other words, the evidence establishes the "tooling capacity" of the machine. It does not establish that Ravenna agreed to produce *up to* a certain amount of castings. In fact, there is no writing to establish that Ravenna specifically contracted to produce a quantity of 325,000 castings at Diversified's request.

3

According to Diversified, it is industry standard that a requirements contract is formed from "a purchase order to buy a tool, followed by a blanket purchase order, followed by shipments against the blanket purchase order and [Electronic Data Interface] releases" and the culmination of same "obligates the supplier to ship based on releases up to the capacity of the tool." (Aff. Katia Moraes, ECF Doc. 15 at ¶ 10). Again, however, Michigan law *requires* that the quantity of a requirements contract be in writing.[1]

Evidence of industry standard does not prove that Ravenna *contracted* to supply Diversified with up to 325,000 castings. In fact, each purchase order specifically stated that the purchase order was "an offer to [Ravenna] by [Diversified] to enter into the purchase agreement" and that each purchase order was the "complete and exclusive statement of such purchase agreement." (Plf.'s First Am. Compl., ECF Doc. 9, Ex. B). As such, it is unlikely that Diversified will succeed in proving a breach of contract because there is no writing to indicate that Ravenna contracted to supply up to 325,000 castings.[2]

The remaining factors also weigh against granting the relief. While Diversified would clearly suffer *some* injury, the evidence does not establish that it would suffer *irreparable* injury. In fact, it appears from Diversified's own arguments that Ford, a non-party to this litigation, would suffer the greatest injury. Diversified argues that neither third parties nor Ravenna would suffer any harm if injunctive relief is granted; however, the record establishes that Ravenna

---

[1] Diversified argues that whether or not there was a requirements contract between the parties is a question for a jury. In support of its position, Diversified cites to *SST Castings v. Amana Appliances*, No. 1:02CV592, 2005 WL 1075014 at *7 (S.D. Ohio April 21, 2005) in which the district court concluded that "the existence of a requirements contract is one best left to the determination of a jury." That case, however, is distinguishable because there was a writing that clearly evidenced the quantity term, i.e. the price quotation at issue explicitly stated that it concerned an "annual quantity" of 200,000 castings. In the present case, there is no evidence other than the fact that the machine was "capable" of producing a certain number of castings.

[2] Moreover, if Diversified would not likely succeed in proving an anticipatory breach of a requirements contract, the Court need not analyze whether it would be successful on its claim for specific performance.

would in fact be harmed if the Court granted injunctive relief and that such relief may force the company into bankruptcy because it does not have the financial ability to comply with such an order. Lastly, although the public interest may be served if the Court grants the injunctive relief because Ford would not have to stop production, this factor alone does not tip the scale in favor of granting the injunctive relief. Having weighed all the relevant factors, the Court hereby DENIES Plaintiff's motion.

       IT IS SO ORDERED.

| | |
|---|---|
|   November 1, 2006   |   */s/ John R. Adams*   |
| Date | John R. Adams |
| | U.S. District Judge |